## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## at COVINGTON

**CIVIL ACTION NO. 05-57-DLB**

**LEE ANN ANDERSON, ET AL.**                                            **PLAINTIFFS**


**vs.**                           **MEMORANDUM OPINION & ORDER**


**SPEEDWAY SUPERAMERICA, LLC**                                      **DEFENDANT**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### I.    INTRODUCTION

This case arises from the former employment relationship between Plaintiff Lee Ann Anderson and Speedway SuperAmerica (SSA).  Plaintiff asserts various state and federal claims, including a claim under the Americans with Disabilities Act (ADA), following a patron's physical attack upon her and SSA's eventual termination of her employment.  The case is presently before the Court on Defendant's Motion for Summary Judgment on all claims (Doc. #37).  Plaintiffs filed a Response (Doc. # 42), to which Defendants filed a Reply (Doc. # 43).  Defendants have also filed a Motion to Strike (Doc. # 44), to which a Response (Doc. # 46) and Reply (Doc. # 49) have been filed.  Therefore, the motions are ripe for the Court's review.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working at SSA in July of 2002, requesting to work the third shift in order to spend more time with her family.  On September 27, 2003, at approximately 1:40 a.m., Plaintiff was brutally beaten while working at SSA as the lone employee.  While

Plaintiff was mopping the floor, a man jumped out from behind a food rack, took Plaintiff's mop, and began to repeatedly beat her.  As a result of the assault, Plaintiff suffered life threatening injuries, including a bleeder at the base of the brain, brain bruising, brain swelling, facial fractures, and the loss of seventeen teeth.  Plaintiff was hospitalized for two days and forced to miss several months of work.  Subsequently, Plaintiff filed a claim with Kentucky's Workers' Compensation system and received payment from SSA for all of her medical bills.

In March of 2004, Plaintiff's doctors released her to return to work.[1]  Her only restriction was that she needed to work during the day because of the prior attack.  Defendant altered Plaintiff's schedule accordingly and Plaintiff requested no other accommodations.  Plaintiff's first day of work after returning from her injuries was March 17, 2004.  In early April, 2004, Plaintiff was scheduled to work a shift beginning at 11 a.m.  However, Plaintiff never made it to work that day because of alleged car problems and failed to notify Defendant of her impending absence.  Two days later, Plaintiff missed her scheduled shift once again and, in violation of company policy, again failed to notify Defendant.  After this second absence, Defendant terminated Plaintiff's employment.

Plaintiffs filed the instant action against Defendant on March 25, 2005, alleging seven claims for relief, including statutory and common-law negligence for providing an

---

[1] Plaintiff's medical records, which are the partial subject of Defendant's Motion to Strike, indicate that Plaintiff had improved significantly by January of 2004 and was ready to return to work soon thereafter.  However, her doctors recommended that she not return until her dental surgery could be completed.

unsafe work environment, breach of an employment contract, employment discrimination under the ADA, and loss of consortium.[2]

### III.   ANALYSIS

**A.   Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *See id.* at 324.  A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).  If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**B.   Negligence Claims Time-Barred**

Defendant asserts that Plaintiff's common-law negligence claim and statutory negligence claim pursuant to Ky. Rev. Stat. (KRS) § 338.031 are both barred by the applicable one-year statute of limitations found in KRS § 413.140(1)(a) because Plaintiff

---

[2] Plaintiff initially alleged a worker's compensation retaliation claim, but Plaintiff has withdrawn that claim and Count Five of Plaintiff's Complaint is therefore dismissed.

filed the instant action on March 25, 2005, which was nearly sixteen months after the occurrence of the relevant conduct.[3]   In response, Plaintiff argues that the statute of limitations was tolled under KRS § 413.170(1) because, following the brutal attack, Plaintiff was of unsound mind for some undefined period.[4]

Plaintiff's negligence claims are governed by the one-year statute of limitations found in KRS § 413.140, providing that "the following actions shall be commenced within one (1) year after the cause of action accrued:   (a) an action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice or servant." Ky. Rev. Stat. Ann. § 413.140(1)(a) (2006).   However, KRS § 413.170(1) does provide that "if a person…was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person." Ky. Rev. Stat. Ann § 413.170(1) (2006).   In other words, assuming Plaintiff was of unsound mind following the attack, she would have one year to bring her action for negligence once she again became of "sound mind."

---

[3] KRS § 338.031 provides that an employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." Ky. Rev. Stat. Ann. § 338.031 (2006).   KRS § 446.070 converts the standard of care required by the violated statute into a claim for negligence per se. *Hargis v. Baize*, 168 S.W.3d 36, 44 (Ky. 2005).

[4] Alternatively, Plaintiff argues that the five-year statute of limitations found in KRS § 413.120 should be applied to the statutory negligence claim.   However, the authorizing statute for Plaintiff's claim, KRS § 338.021, which basically mandates that employers provide a safe working environment, does not in and of itself create a private right of action; the statute is of a regulatory origin.   A private right of action only exists as authorized under the statutory right of action provision found in KRS § 446.070, effectively transforming a regulatory standard of care into a claim for negligence per se.   Therefore, the statute of limitations for negligence claims relating to personal injuries, KRS § 413.140, applies and requires that an action be brought within one year of accrual.

Under Kentucky law, the term "unsound mind," in the context of KRS 413.170(1), has been interpreted to mean that the person claiming the disability must show that she has been rendered incapable of managing her own affairs. See *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 297 (Ky. Ct. App. 1993) (citing *Southeastern Kentucky Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467 (Ky. 1988). "Once the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute, and there is simply no proof in this record that [Plaintiff] was of unsound mind which would so toll the one-year statute of limitations" beyond the deadline of March 25, 2004, which was one year before the actions was filed. *Gaylor*, 756 S.W.2d at 469.

Although Plaintiff provides very little evidence of her unsound mind after the attack on September 27, 2003, and what is provided is identified by Defendant as improperly submitted, the Court recognizes that Plaintiff was likely of unsound mind for at least a short time given the very serious nature of her injuries. However, there is nothing in the record to suggest that Plaintiff was of unsound mind through March 25, 2004, nearly six months after the attack. Plaintiff provides four pages of medical records that do not indicate any lack of mental capacity, only that she suffers from headaches and "emotional stuff from time to time."

Assuming arguendo that Plaintiff was of unsound mind for an extended period of time, she was authorized by her physician and subsequently returned to work on March 17, 2004. The ability to return to work evinces an ability to manage one's own affairs[5] and,

---

[5] Plaintiff even admitted in her deposition that, following her return to work, she was able to take care of herself and also to seek counsel in regards to her prospective claims against SSA, but she simply kept forgetting to do so.

therefore, a legally sound mind for statute of limitations purposes.  Even crediting Plaintiff's

medical records as proper evidence, the records in late January, 2004, four months after

the attack and two months before her return to work, indicate that Plaintiff was of probable

sound mind at that time: "Leann is in today . . . Still having some headaches but doing

much better . . . I am basically heading her back to work but she does need to have her

teeth and be presentable to the public . . ."  In the absence of medical evidence to the

contrary, the record demonstrates, based at the very least on Plaintiff's return to work and

her physician's release, that Plaintiff was of sound mind more than one year prior to her

bringing the claim for negligence.  Therefore, although the statute of limitations was tolled

temporarily, it was not tolled beyond March 25, 2004 and, accordingly, Plaintiff's negligence

claims are barred pursuant to KRS § 413.140(1)(a).

## C.      Breach of Contract Claim

In Count Three, Plaintiff alleges that she entered into an employment contract with

Defendant and that the contract was breached upon Defendant's failure to provide a safe

workplace.  Defendant argues that Plaintiff's breach of contract claim cannot succeed

because Plaintiff was an at-will employee and, in general, an employer may discharge an

at-will employee for "good cause, for no cause, or for a cause that some might view as

morally indefensible."  *Wymer v. JH Properties, Inc.* 50 S.W.3d 195, 198 (Ky. 2001); see

also, *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky. Ct. App. 1977).  In contrast, although

Plaintiff concedes that she was employed at-will,[6] she nevertheless argues that her breach

---

[6] Plaintiff admitted in her deposition, with sufficient understanding, that she was at-will:

Q:      You knew there wasn't a contract between you and the company for
         emloyment, correct?

of contract claim should be sustained because "even at-will employees are human beings" and Defendant has a responsibility to provide a safe working environment.

As a threshold matter, Plaintiff's claim as couched within her Response to Defendant's motion would be subsumed by Plaintiff's negligence claims, which are time-barred.  Plaintiff states: "The at-will employee doctrine means that an employee can be terminated at will, it does not mean that the employer can intentionally put her life in danger."  Plaintiff is correct insofar as the at-will employee doctrine does not cover the circumstances as alleged by Plaintiff because where there is no employment contract, there can be no breach thereof.  In other words, Plaintiff's claim that Defendant placed her in danger would constitute an independent tort action, not breach of contract, and would therefore be subsumed by Plaintiff's negligence claims alleging the same conduct.

Additionally, even if Plaintiff's claim for breach of contract moves forward under the theory couched in Plaintiff's Complaint that the "Employee Handbook" created an implied employment contract, Plaintiff's claim cannot be sustained.  At several points in both Plaintiff's employment application and employment documents, Plaintiff acknowledges via signed affirmation that her employment was at-will and that the employment materials did not alter this relationship.[7]  "Under Kentucky law, a clear disclaimer defeats an employee's

--------

> A:     Correct.
> Q:     Let me just repeat my question.  You understood there was no contract between you and the company for employment?
> A:     Yes, sir.
> Q:     And that was because it was an at will relationship, correct?
> A:     Yes.

(Anderson Depo., p. 56).

[7] Notably, there is a separate "Nature of Employment Relationship" document wherein Plaintiff acknowledges the lack of any employment contract.  (Doc. # 38-5, p. 5).  Furthermore, within a document entitled "Employee Agreement," Plaintiff acknowledges, in light of the company's

breach of contract claim." *Wathen v. GE*, 115 F.3d 400, 408 (6th Cir. 1997) (citing *Nork v. Fetter Printing Co.*, 738 S.W.2d 824, 827 (Ky. Ct. App. 1987), *Noel v. Elk Brand Mfr. Co.*, 53 S.W, 3d 95, 98-99 (Ky. App. 2000). Therefore, Plaintiff's explicit disclaimer is fatal to her breach of contract claim.

**D.     ADA Claim**

Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). An employee may not file suit under the ADA without obtaining a right to sue letter from the EEOC. *See id.* Defendant argues that Plaintiff's ADA claim must be dismissed because she failed to file a charge with the EEOC within 300 days of the alleged discriminatory act, i.e., "firing her and refusing to make reasonable accommodations for her disability."

Plaintiff concedes that she did not file a charge with the EEOC within the required time period, and has yet to file said charge, but argues that the requirement was tolled by her disability resulting from the attack. Despite Plaintiff's failure to divulge why she should be excepted from the statutory requirement or the exact period of tolling, Plaintiff cites for support the proposition that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of

---

policy manuals, that: "*This Agreement is only informational and under no circumstances is it to be construed as creating or constituting a contract of employment (expressed or implied) between the Company and any employee. An employee may leave the Company at any time for any reason. Likewise, the Company is not committed to any employee for any fixed term of employment.*" (Doc. # 38-5, p. 6) (emphasis in original).

limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. TWA*, 455 U.S. 385, 393 (1982).

Plaintiff's unsupported assertions fail for three reasons.  First, Plaintiff offers no evidence of the alleged disability that would necessitate equitable tolling of the EEOC requirement under the circumstances.  Second, Plaintiff does not allege sufficient facts as to the period of tolling to sustain the claim.  Third, although Plaintiff references the potential tolling in the context of her negligence claims as support for tolling here, the Court's disposition of the negligence claims as time-barred, because Plaintiff possessed a sound mind as evidenced by her return to work, renders Plaintiff's argument for tolling the EEOC requirement without merit.

### E.    Loss of Consortium Claim

Because Plaintiff's negligence claims are time-barred, her children's claims for loss of parental consortium are similarly barred as derivative claims.  *See Daley v. Reed*, 87 S.W.3d 247, 248 (Ky. 2002).

### IV.    CONCLUSION

In accordance with the foregoing analysis, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment (Doc. #37) be, and hereby is, **GRANTED**;

(2)    Defendant's Motion to Strike (Doc. # 44) be, and hereby is, **DENIED**;

(3)    Plaintiff's Complaint be, and hereby is, **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court; and

(4)     A Judgment in favor of Defendant will be entered concurrently herewith.

This 6th day of March, 2007.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\2-05-57 Anderson (MOO).wpd

-10-